J-S46037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN CARTER | : | |
| | : | |
| Appellant | : | No. 3284 EDA 2018 |

Appeal from the Judgment of Sentence Entered October 25, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003765-2014

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                  **FILED OCTOBER 07, 2019**

Appellant, Shawn Carter, appeals from the judgment of sentence of four to eight years' confinement, plus five years of probation, imposed following his convictions for robbery, burglary, and possession of an instrument of a crime.[1]  We affirm.

> The trial court summarized the evidence as follows:
>
> On February 15, 2014, Donald Hukins, a childhood friend of [A]ppellant, who knew [A]ppellant for twenty-five or so years and considered him to be a good friend, was asleep inside his residence, which was located in the 8000 block of Fayette Street in the East Mount Airy section of Philadelphia, when someone entered his residence without permission and began ransacking it.  The invader, who Hukins testified he was unable to recognize, took

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa. C.S. §§ 3701(A)(ii), 3502(A)(1), and 907(A), respectively.

approximately $1000.00 in cash and some prescription Oxycodone and Xanax pills. He also overturned a bed situated on the floor of the residence while looking for money. The male fled soon after Hukins awoke.

When the male left, Hukins called the police and his parents, the owners of the residence and related what just had occurred. The police arrived shortly thereafter and arrested Hukins on an outstanding warrant. Once in custody, Hukins gave police a statement during the morning of the next day wherein he told police that [A]ppellant, who resided near Hukins residence, was the person who entered his residence and took his money and prescription drugs.

Although Hukins did not dispute the contents of his statement, he testified [at the preliminary hearing and at trial] that [A]ppellant was not the person he saw inside his residence. He indicated that he had a problem with drugs and he may have given the police [A]ppellant's name possibly because [A]ppellant and a couple of other men had visited him the night before and he lost money playing dice, which made him frustrated. He added that he may have been confused about the identity of the person who came into the residence when interviewed because he saw [A]ppellant the previous evening and he was under the influence of some medication when the home invasion occurred and also when he was interviewed. Although he did not recall giving the statement to police, he identified his signature on the written copy of his statement and also a color photograph of [A]ppellant that had been displayed to him during the police interview.

Philadelphia Police Detective Edward Davis interviewed Hukins. At the time, the detective noted that although Hukins appeared to be angry, he was composed and coherent such that he understood what was being asked and able to answer the questions posed to him in an appropriate manner. Hukins also did not appear to be under the influence of any substance while being interviewed. During the

- 2 -

interview, Hukins gave the following response to the detective when asked what had occurred inside the residence the previous evening:

> The front door was unlocked. I was on the first floor of the couch half asleep. I heard the door open. Shawn Carter came in and came over to me on the couch. He had a silver semiautomatic handgun and he pointed it at me. He then said, ["]Where is the money?["] He took the money I had sitting on the table and he said, ["]Where is the rest?["] He told me to get up and he took me upstairs. He went through my room and more money. He flipped my room and then he left.
>
> N.T. 6/9/16, 48.

> The detective also testified that Hukins identified a photograph of [A]ppellant and gave police other names [A]ppellant used. Based on the information Hukins gave him, Detective Davis obtained a search warrant for [A]ppellant's residence. On February 27, 2014, police executed the warrant but did not recover any physical evidence related to the crime herein.

Trial Court Opinion, filed January 30, 2019, at 2-3. On November 12, 2018, Appellant filed this timely direct appeal.[2]

Appellant presents the following issue for our review:

---

[2] Appellant filed a post-sentence motion that was denied on March 7, 2017, by operation of law. He did not file a notice of appeal following the denial of his post-sentence motion, and on September 12, 2017, he filed a petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, which resulted in the issuance of a trial court order granting him right to file a notice of appeal *nunc pro tunc*. He filed his statement of errors complained of on appeal on January 22, 2019.

> Did the Court improperly convict Appellant Carter where the verdict was contrary to the weight of the evidence at trial?

Appellant's Brief at 2.

We apply the following standard of review to a challenge to a trial court's determination that a verdict is against the weight of the evidence:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> > Appellate review of a weight claim is an exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> > The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or

> where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted). For an appellant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Rodriquez*, 174 A.2d 1130, 1140 (Pa. Super. 2017) (quoting *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003).

Before this Court, Appellant contends that the trial court improperly denied his post-sentence motion, and that the verdict was contrary to the weight of the evidence produced at trial. Appellant asserts that Hukins' statement to the investigating detective identifying him as the perpetrator was of poor quality and rendered unreliable, when contrasted with Hukins' subsequent testimony at the preliminary hearing and at trial that he did not believe Appellant committed the crime. Appellant challenges the reliability of Hukins' statement implicating him, especially given Hukins' testimony at trial that he was under the influence at the time of the interview and could not remember all of its substance. Appellant's Brief at 7. Appellant further argues that Hukins had a motive for lying in the initial interview (Hukins testified that he had lost money to Appellant on the previous evening) and a history of doing so (citing Hukin's 2009 conviction for making a false report to law enforcement). *Id*.

- 5 -

After careful review, we conclude that the trial court committed no abuse of discretion, and we find no basis to conclude that the law was not properly applied, or that the verdict or the denial of the weight claim was a result of partiality, prejudice, bias, or ill-will. See **Clay**, supra at 1055. The trial court wholly rejected Hukins' testimony at trial that he failed to recognize Appellant, a good friend whom he had known all his life, when he entered the residence. Trial Court Opinion at 5. Indeed, in contrast to the detailed statement Hukins provided to the investigating detective, Hukins' testimony at trial was marked by its uncertainty and vagueness. Hukins testified that he did not totally remember giving the statement to police that implicated Appellant. Notes of Testimony (N.T.). at 25. When asked whether he knew the person he awoke to find ransacking his home, Hukins responded, "not off the top of my head, no," and that he could not "really say" he knew who it was. N.T. at 10. When asked whether the intruder spoke to him, he responded that he could not remember. N.T. at 11. When Hukins called the police on the night of the incident, he gave them Appellant's name, and in his statement to the detective the following morning, Hukins described a silver semiautomatic handgun that he stated Appellant had pointed at him; at trial, Hukins testified he thought he saw a gun but was not sure, but that in any event he had seen "something metal." N.T. at 12. The trial court noted that in his statement to the police, Hukins was able to list with certainty what was taken from him and what occurred during the incident, and the passage of time between the incident and the time of the police interview was sufficient

time for the effects of any intoxicants he may have ingested to wear off. Trial Court Opinion at 5. The investigating detective testified that Hukins was angry, but composed and sober when interviewed, more than eight hours after the incident occurred, such that he was able to answer his questions coherently, in an appropriate manner. N.T. at 45. The trial court properly considered Hukins' statement as evidence: a prior inconsistent statement may be offered as substantive evidence if (i) it is given under reliable circumstances; and (ii) the declarant is available for cross-examination. *Commonwealth v. Enix*, 192 A.3d 78, 81 (Pa. Super. 2018) (citing *Commonwealth v. Lively*, 610 A.2d 7, 9-10 (Pa. 1992); Pa. R.E. 803(1)). Finally, the trial court considered Hukins' admission that he abused drugs, as well as his previous conviction for making false statements to authorities, and was not persuaded that Hukins' statement to the police was not truthful. Trial Court Opinion at 6.

As finder of fact, the trial court had sole discretion to assess the credibility of the witnesses; here, the trial court wholly rejected Hukins' preliminary hearing and trial testimony, and determined that the account Hukins provided to the detective on the day after the incident was accurate. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v.*

***Hopkins***, 747 A.2d 910, 917 (Pa. Super. 2000). The trial court acted within its discretion by denying Appellant's challenge to the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/19